RONALD WAYNE STRICKLAND, BY HIS NEXT FRIEND, W. H. STEED, V. LESLIE HUGHES, ORIGINAL DEFENDANT AND THE AETNA CASUALTY & SURETY COMPANY, ADDITIONAL DEFENDANT (INTERVENOR).

(Filed 17 April 1968.)

**1. Parties § 1—**

Only parties of record to a suit have a standing therein which will enable them to take part in or control the proceedings.

**2. Parties § 6—**

Intervention is the proceeding by which one not originally a party to an action is permitted, on his own application, to appear therein and join one of the original parties in maintaining the action or defense, or to assert a claim or defense against some or all of the parties to the proceeding as originally instituted.

**3. Same—**

Refusal to permit a necessary party to intervene is error.

**4. Parties § 8—**

The trial court should bring in all parties who have such an interest in the subject matter of the action that a valid judgment cannot be rendered in the action completely and finally determining the controversy without their presence. G.S. 1-73.

**5. Parties § 4—**

It is ordinarily within the discretion of the court to permit proper parties to intervene.

**6. Parties § 3—**

Before a third party will be permitted to become a party defendant in a pending action, he must show that he has some legal interest in the subject matter of the litigation.

**7. Insurance § 6—**

    The statutory provisions governing a policy of insurance control over contrary provisions in the policy.

**8. Insurance §§ 106, 108—**

    Provision of an assigned risk policy that no action should lie against the insurer unless as a condition precedent thereto the insured shall have fully complied with all the terms of the policy, although unenforceable insofar as it conflicts with the provisions of G.S. 20-279.21(f)(1), is nonetheless valid when asserted by the insurer as a defense to a judgment obtained against an insured by collusion of the parties.

**9. Insurance §§ 100, 106, 109—**

    The obligation of an automobile liability insurer to defend an action brought by the injured party against the insured becomes absolute when the allegations of the complaint bring the claim within the coverage of the policy, but where the insurer defends under a full reservation of right to deny coverage, the defense of the action in obedience to its contractual obligation does not estop the insurer to assert the defenses of fraud and collusion in any subsequent action against it based upon a judgment obtained against its insured.

**10. Judgments § 27—**

    Whenever the rights of third persons are affected, they may collaterally attack a judgment for fraud committed by one party, or for the collusion of both parties.

**11. Parties § 6;   Insurance § 104—**

    In an action by an injured party against an insured under a policy of assigned risk automobile insurance to recover for injuries arising out of an automobile accident, the insurer is neither a necessary nor a proper party to intervene therein on the ground that the parties have conspired to defraud the insurer, since (1) the issue of fraud and collusion raised by the intervenor will be detrimental to the integrity of the issues raised by the original pleadings, and (2) since any judgment procured by fraud or collusion will not be conclusive against the insurer in a subsequent action upon the judgment by the injured party.

APPEAL by plaintiff from *Gambill, J.,* at the September 1967 Civil Session, DAVIDSON Superior Court.

Civil action by plaintiff commenced 9 January 1967 to recover damages for personal injuries allegedly caused by the negligence of defendant in the operation of an automobile.

Plaintiff alleged that on 13 August 1965 he was "riding as a passenger in an automobile operated by the defendant," and that defendant ran off the road and turned over several times permanently injuring plaintiff. Various specific acts of negligence are alleged. Plaintiff seeks damages in the sum of $25,000. The automobile is not further described or identified.

Defendant Hughes filed answer admitting that at the time and

place alleged he "was operating a vehicle in which plaintiff was a passenger, and that they were involved in an accident in which the plaintiff received some injuries." All allegations of negligence, however, are denied. For further answer and defense, defendant Hughes alleged that he was driving in a careful manner when he met another car which forced him off the road; that plaintiff was the actual owner of the car which defendant was driving and was riding on the right front seat; that if defendant was driving in a negligent manner, which is denied, plaintiff as owner had the legal right to control the vehicle and required defendant to drive carefully; that failure to do so was contributory negligence on the part of the plaintiff.

The Aetna Casualty and Surety Company (Aetna) filed a motion to intervene, alleging in summary as follows:

1. The complaint alleges that plaintiff was riding as a passenger in an automobile operated by defendant which was negligently driven off the right side of the road and overturned, injuring plaintiff. It contains no description or allegation of ownership of the automobile involved.

2. The intervenor is informed and believes that the automobile involved in the wreck was a 1963 Chevrolet, North Carolina license No. UJ-3942 (1965), owned by plaintiff Ronald Wayne Strickland who was under the age of 21 years and registered in the name of his mother, Helen Honeycutt Strickland.

3. The automobile was being operated by plaintiff Ronald Wayne Strickland. Defendant Leslie Hughes, who is plaintiff's brother-in-law, was a passenger in said automobile at the time of the wreck.

4. At the time of the accident Aetna had written a policy of liability insurance on said 1963 Chevrolet under the Assigned Risk plan and in compliance with the requirements of the North Carolina Financial Responsibility Laws as contained in Chapter 20 of the General Statutes. This policy obligates Aetna to pay on behalf of the insured, including any person driving the automobile with the permission of the named insured, all sums which the insured becomes legally obligated to pay as damages for bodily injury arising out of the ownership, maintenance or use of the automobile.

5. Aetna's investigation of the wreck "conclusively reveals" that plaintiff Ronald Wayne Strickland was the driver and defendant Leslie Hughes was the passenger. After Strickland brought suit against Hughes, Aetna employed Frank P. Holton, Jr., Attorney at Law, to represent Hughes pursuant to the terms of the policy. Hughes refused to verify an answer denying that he was the driver

and has filed an answer asserting that he was the driver of the automobile. Aetna is defending the suit under a full reservation of rights to deny coverage on the ground that the said Leslie Hughes has fraudulently conspired with Ronald Wayne Strickland in an attempt to perpetrate a fraud upon the court and upon Aetna.

6. Aetna's policy contains a "cooperation clause" which requires the insured to cooperate with the company, attend hearings and trials, secure and give evidence, and obtain the attendance of witnesses. Insured has not only failed to cooperate but has fraudulently conspired to suppress and withhold evidence that plaintiff was the driver of the vehicle. No issue in that respect is raised by the pleadings.

7. In the event this fraudulent conspiracy results in a judgment against Leslie Hughes, Aetna will be required by law and by the terms of its policy to pay said judgment and will be without adequate legal recourse to protect its rights. The trial of this cause under the circumstances set forth will substantially and materially affect the rights of Aetna, and for these reasons Aetna should be permitted to intervene in the cause as a party defendant, file appropriate pleadings and offer evidence showing plaintiff was the driver of the vehicle on the occasion in question.

The motion was heard before Judge Gambill at the 11 September 1967 Civil Session of the Superior Court of Davidson County following which he ordered, in the discretion of the court, that Aetna be made a party defendant and be permitted to file answer to the complaint "alleging that the plaintiff was the operator of the automobile on the occasion alleged in the complaint and such other defenses as are available to the plaintiff's cause of action."

To the rendition and signing of such order, plaintiff objected and appealed. This constitutes his only assignment of error.

*Charles F. Lambeth, Jr., Attorney for the plaintiff appellant.*

*Charles H. McGirt of Walser, Brinkley, Walser & McGirt, Attorney for Additional Defendant, The Aetna Casualty and Surety Company, Intervener.*

HUSKINS, J. Only parties of record to a suit have a standing therein which will enable them to take part in or control the proceedings. If they desire to seek relief with respect to the matters involved they must either obtain the status of parties in the suit or, in proper instances, institute an independent action. Thus a person not originally a party may be permitted to become a party by his own intervention. "In legal terminology, 'intervention' is the proceeding by

which one not originally a party to an action is permitted, on his own application, to appear therein and join one of the original parties in maintaining the action or defense, or to assert a claim or defense against some or all of the parties to the proceeding as originally instituted. Stated in another way, 'intervention' is the admission by leave of court of a person not an original party to the pending legal proceeding, by which such person becomes a party thereto for the protection of some right or interest alleged by him to be affected by such proceeding." 39 Am. Jur., Parties § 55. See also *Rocca v. Thompson*, 223 U.S. 317, 56 L. ed. 453, 32 S. Ct. 207, affirming 157 Cal. 552, 108 P. 516; *Gorham v. Hall*, 172 Ark. 744, 290 S.W. 357.

When a complete determination of the controversy cannot be made without the presence of a party, the court must cause it to be brought in because such party is a necessary party and has an absolute right to intervene in a pending action. G.S. 1-73; *Garrett v. Rose*, 236 N.C. 299, 72 S.E. 2d 843. Hence, refusal to permit a necessary party to intervene is error. *Simms v. Sampson*, 221 N.C. 379, 20 S.E. 2d 554; *Temple v. Hay Co.*, 184 N.C. 239, 114 S.E. 162. When a person is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence, such person is a necessary party to the action. *Garrett v. Rose, supra; Colbert v. Collins*, 227 N.C. 395, 42 S.E. 2d 349; *Jones v. Griggs*, 219 N.C. 700, 14 S.E. 2d 836.

The term "proper party" to an action or proceeding means "a party who has an interest in the controversy or subject matter which is separable from the interest of the other parties before the court, so that it may, but will not necessarily, be affected by a decree or judgment which does complete justice between the other parties." 67 C.J.S., Parties § 1. It is ordinarily within the discretion of the court to permit proper parties to intervene. *Childers v. Powell*, 243 N.C. 711, 92 S.E. 2d 65.

Before a third party will be permitted to become a party defendant in a pending action, he must show that he has some legal interest in the subject matter of the litigation. "His interest must be of such direct and immediate character that he will either gain or lose by the direct operation and effect of the judgment, and it must be involved in the subject matter of the action. One whose interest in the matter in litigation is not a direct or substantial interest, but is an indirect, inconsequential, or a contingent one cannot claim the right to defend. 39 Am. Jur. 900, 935." *Mullen v. Louisburg*, 225 N.C. 53, 56, 33 S.E. 2d 484, 486. See also, *Griffin & Vose, Inc. v. Minerals Corp.*, 225 N.C. 434, 35 S.E. 2d 247.

STRICKLAND *v.* HUGHES.

Does Aetna presently have such a direct and immediate interest in the subject matter of this litigation that it will either gain or lose by the direct operation and effect of any judgment Strickland might recover against Hughes? Answer to this question requires consideration of the following facts and circumstances and pertinent legal principles applicable to them.

The insuring agreements of Aetna's policy of compulsory liability insurance, issued by it under the assigned risk plan pursuant to G.S. 20-279.34, obligated it "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" by reason of personal injuries or property damage caused by accident and arising out of the ownership, maintenance or use of the insured automobile.

In obedience to the requirements of G.S. 20-279.21 (b) (2), this policy insures the person named therein and any other person, as insured, using the automobile with the permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle.

The policy is also subject to the following provisions contained in G.S. 20-279.21 (f) (1):

> "The liability of the insurance carrier with respect to the insurance required by this article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy."

The policy contained the following "no action" clause:

> "No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.
>
> "Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any

> right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability."

This "no action" clause, insofar as contrary to G.S. 20-279.21(f)(1), quoted above, is unenforceable as to the coverage within compulsory limits provided by assigned risk policies. If the terms of the policy and the statute conflict, the statute controls. *Howell v. Indemnity Co.,* 237 N.C. 227, 74 S.E. 2d 610. Even so, this clause is valid when asserted as a defense to a judgment obtained against an insured by collusion. *Jones v. Insurance Co.,* 270 N.C. 454, 155 S.E. 2d 118. The insurer's liability cannot be predicated on a judgment obtained against the insured by collusion. 4 Strong's N. C. Index 2d, Insurance, § 106; *Jones v. Insurance Co., supra.*

So in this case, plaintiff initially has no right to maintain an action against Aetna. He can do so only after the liability of Hughes to plaintiff has been determined by judgment. *Jones v. Insurance Co., supra.* When such judgment is obtained it will constitute a final adjudication and determination of the legal liability of Hughes to the plaintiff, unless and until it is set aside for fraud, collusion, excusable neglect, or other cause recognized by law as sufficient. *Jones v. Insurance Co., supra; Sanders v. Chavis,* 243 N.C. 380, 90 S.E. 2d 749.

Furthermore, when the insurer is later sued by the injured person, if the insurer had a right to defend the action against the insured, had timely notice of such action, and defends or elects not to defend, the judgment in such case, *in the absence of fraud or collusion,* is generally binding upon the insurer as to issues which were or might have been litigated therein. 7 Am. Jur. 2d, Automobile Insurance § 227, and cases cited. Not so, however, when the judgment is obtained by fraud and collusion. There is authority to the effect that although the insurer defended the action between its insured and an injured person, the result of that suit does not bar the insurer from setting up any matter constituting a defense which was not necessarily determined in the original action. *Sweeney v. Frew,* 318 Mass. 595, 63 N.E. 2d 350; 7 Am. Jur. 2d, *supra.* We emphasize in this connection that, under the terms of its policy, Aetna's obligation to defend this action against the named insured, or any other person using the vehicle with the permission of the named insured, is absolute. It becomes absolute when the allegations of the complaint bring the claim within the coverage of the policy. *Ins. Co. v. Ins. Co.,* 269 N.C. 358, 152 S.E. 2d 513. Aetna allegedly defends under a full reservation of rights to deny coverage. Thus, defense of the action in obedience to its contractual obligations does not estop Aetna to assert fraud and collusion in any subsequent action against

it based upon a judgment thus obtained against its insured. Such defense could not be raised and determined in the original action because defendant refused to raise it in his answer.

Judgments of any court may be impeached for fraud or collusion by strangers to them who, if the judgments were given full faith and credit, would be prejudiced in regard to some pre-existing right. Freeman on Judgments, 5th ed., Vol. 1, §§ 318, 319. ". . . [W]henever a judgment or decree is procured through the fraud of either of the parties, or by the collusion of both, for the purpose of defrauding some third person, he may escape from the injury thus attempted by showing, even in a collateral proceeding, the fraud or collusion by which the judgment or decree was obtained." Freeman on Judgments, 5th ed., Vol. 1, § 318, and cases cited.

"It is a well-settled general rule that whenever the rights of third persons are affected they may collaterally attack a judgment for fraud committed by one party, or for collusion of both parties." 30A Am. Jur., Judgments § 879, where numerous cases are cited in support of the text.

Where the rights of persons not parties or privies to a proceeding are adversely affected by a judgment, it is generally held that such persons are allowed to impeach the judgment whenever its enforcement is attempted against them. 30A Am. Jur., Judgments § 849, citing *Reynolds v. Cotton Mills*, 177 N.C. 412, 99 S.E. 240.

Fraud has been regarded as extrinsic and thus subject to collateral attack "where it operates upon matters pertaining, not to the judgment itself, but to the manner in which it is procured." 30A Am. Jur., Judgments § 784. Thus it was held to be extrinsic fraud where one, alleging injury as a result of negligence, feigned paralysis and by collusion between himself, his physician, and members of his family, deceived the court and jury and received an award of damages on the theory that he was paralyzed. *Chicago Rock Island and P. R. Co. v. Callicotte* (C.A. 8), 267 F. 799, 16 A.L.R. 386, cert. den. 255 U.S. 570, 65 L. ed. 791, 41 S. Ct. 375.

In *Brune v. McDonald (Pacific Indemnity Co. Intervener)*, 158 Ore. 364, 75 P. 2d 10, it was held that a liability insurer was not entitled to intervene, in an action by a guest passenger against the driver for personal injuries negligently inflicted, and enjoin prosecution of the case on the ground that plaintiff and defendant were conspiring to defraud the insurer. The court stated that the direct legal operation of the judgment would not cause intervenor to gain or lose anything. The court further observed that intervenor raised an entirely new and different issue and stated: " 'The courts have always striven to maintain the integrity of the issues raised by the

original pleadings, and to keep newly admitted parties within the scope of the original suit. . . . The injection of an independent controversy by intervention is improper.' "

It was held in *Bertinelli, et al. v. Galoni,* 331 Pa. 73, 200 A. 58, that an insured defendant who fraudulently colludes with a plaintiff in obtaining a judgment against himself cannot escape from the judgment which he aided in bringing about; but when claim is asserted against the insurer to collect the amount of such a judgment the trial court must afford the insurer the fullest opportunity to establish the collusion and to establish the failure of the insured to follow the course of conduct which the insurance contract required of him.

In *Renschler v. Pizano,* 329 Pa. 249, 198 A. 33, it was held that a judgment recovered against an insured by an injured party is conclusive only in the absence of fraud in a subsequent action by the injured party against the insurance carrier. ". . . [T]he defense of fraud is always available to the indemnitor, the judgment against the indemnitee being conclusive only in the absence of fraud." Petition by insurer to intervene for the purpose of moving to set aside the fraudulent judgment was denied.

In *Corridan v. Rose,* 137 Cal. App. 2d 524, 290 P. 2d 939, it was held error to permit defendants' liability insurer to intervene and take part in the trial of an action by an infant plaintiff against his uncle and grandfather, the insurer claiming collusion and lack of defense on part of defendants.

In *Bradford v. Kelly,* 260 N.C. 382, 132 S.E. 2d 886, plaintiff's insurer sought to intervene in order to plead a release in favor of its insured which otherwise would not be set up. Held: "It is the rule with us that in an action for damages founded upon the alleged negligence of the insured, his liability insurance carrier is not a proper party defendant," and insurer does not have such an interest in the subject matter of the litigation as to constitute it a necessary party. Motion to intervene was denied. Accord, *Taylor v. Green,* 242 N.C. 156, 87 S.E. 2d 11.

In light of these authorities, we are of the opinion that Aetna is neither a necessary nor a proper party. It does not presently have such a direct and immediate interest in this action that it will either gain or lose by the direct operation and effect of any judgment Strickland might recover against Hughes. Aetna's interest is indirect and contingent. If allowed to intervene, the integrity of the issues raised by the original pleadings cannot be maintained. A new and different issue of fraud and collusion will be raised by intervention. The trial court will be faced with an anomaly wherein Hughes and

his counsel furnished by Aetna admit he was driving the automobile while at the same time Aetna through different counsel denies it. To insure a more orderly trial of cases of this kind and preserve the practice and procedure heretofore followed in North Carolina, the intervention herein sought should be denied. Notwithstanding the provisions of G.S. 20-279.21(f)(1), any judgment recovered against an insured by an injured third party is conclusive in a subsequent action by the injured party against insured's liability carrier *only in the absence of fraud.* Collusion is fraud. This statute was not intended to compensate an insured for injury and damage negligently inflicted upon himself. "The primary purpose of compulsory motor vehicle liability insurance is to compensate *innocent victims* who have been injured by financially irresponsible motorists." (Emphasis ours). *Ins. Co. v. Roberts,* 261 N.C. 285, 134 S.E. 2d 654.

What we have said here is without prejudice to the parties at the trial. The case is still in the pleading stage. The evidence may not support the allegations. We simply hold that under the circumstances here alleged Aetna is not entitled to intervene but may, in a subsequent action against it, plead the defense of fraud and collusion incident to the manner in which judgment is obtained by Strickland against Hughes.

The order allowing Aetna to intervene was improvidently entered and is

Reversed.